Andersen v Bank of N.Y. Mellon (2025 NY Slip Op 51340(U))

[*1]

Andersen v Bank of N.Y. Mellon

2025 NY Slip Op 51340(U)

Decided on July 16, 2025

Supreme Court, Richmond County

Castorina, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 16, 2025
Supreme Court, Richmond County

Tracy Andersen, Plaintiff,

against
Bank of New York Mellon, F/K/A The Bank of New York, as 
 Trustee for the Certificate Holders of the CWABS Inc. Asset Backed Certificates, Series 2007-1, Defendants.

Index No. 100003/2025

Plaintiff pro se
Tracy Andersen 
Attorney for Defendants
Kellie A Lavery 
Husch Blackwell LLP 
1801 Pennsylvania Ave NW Ste 1000
Washington, DC 20006-3606 
Phone: (202) 378-5389 
E-mail:[email protected]

Ronald Castorina, Jr., J.

I. Statement Pursuant to CPLR § 2219 [a]
The following papers and proceedings were considered in connection with the motion of Defendant Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of the CWABS Inc., Asset-Backed Certificates, Series 2007-1, seeking dismissal of the Complaint pursuant to CPLR § 3211 [a] [7]:
1. Notice of Motion dated March 24, 2025 (NY St Cts Filing [NYSCEF] Doc No. 9);
2. Defendant's Memorandum of Law in Support of Motion to Dismiss (NY St Cts Filing [NYSCEF] Doc No. 10);
3. Affirmation of Service dated March 24, 2025 (NY St Cts Filing [NYSCEF] Doc No. 12);
4. Plaintiff's Affidavit in Opposition to the Motion to Dismiss, sworn to May 5, 2025, with attached Exhibits A through E (NY St Cts Filing [NYSCEF] Doc Nos. 17-22);
5. The pleadings and exhibits annexed thereto, including the Summons and Complaint filed January 15, 2025; and
6. Oral argument held on the record before the undersigned on July 10, 2025, at the Supreme Court, Richmond County. Plaintiff, appearing pro se, was permitted by leave of court to participate telephonically. The proceedings were held in open court and were open to the public.
At the commencement of the proceedings on July 10, 2025, the Court inquired of the Plaintiff whether she wished to adjourn the matter to obtain counsel. The Court explicitly advised her of her right to retain an attorney and stated that, if requested, additional time would be granted to permit her to do so. Plaintiff declined the opportunity and affirmatively elected to proceed with oral argument that day and with the Court's ruling on the motion. The Court thereupon instructed Plaintiff on the record that she would be held to the same legal standards as if she were represented by counsel, and she acknowledged her understanding of that directive.
Motion Sequence No. 002 seeks an order dismissing the Complaint in its entirety, with prejudice, pursuant to CPLR § 3211 [a] [7], for failure to state a cause of action.
II. Procedural Posture and Introduction
Before this Court is a motion brought by Defendant, Bank of New York Mellon, formerly known as The Bank of New York, as Trustee for the Certificate Holders of the CWABS Inc., Asset-Backed Certificates, Series 2007-1 ("Defendant" or "Trustee"), pursuant to CPLR § 3211 [a] [7], seeking dismissal of the complaint filed by Plaintiff, Tracy Andersen ("Plaintiff"), for failure to state a claim upon which relief may be granted.
Plaintiff, proceeding pro se, commenced this action by filing a verified complaint dated January 15, 2025, wherein she seeks a judgment quieting title to the premises located at 116 New Street, Staten Island, New York, premised on allegations that the mortgage encumbering the property is null and void due to the purported untimely assignment of said mortgage into a securitized trust. Plaintiff contends that such assignment violated terms allegedly embedded in a Pooling and Servicing Agreement ("PSA") and a Prospectus Supplement related to a Real Estate Mortgage Investment Conduit ("REMIC"), and further invokes provisions of the Internal Revenue Code governing REMIC eligibility.
Defendant now moves to dismiss, asserting that (i) Plaintiff lacks standing to challenge compliance with the securitization instruments; (ii) the Internal Revenue Code confers no private right of action; and (iii) the mortgage remains valid and operative as a matter of settled law. Plaintiff opposes the motion, annexing additional materials including full copies of the PSA and related tax code excerpts.
III. Findings of Fact
This action arises from a residential mortgage transaction executed more than eighteen years ago and the Plaintiff's subsequent efforts to invalidate the mortgage based upon alleged procedural irregularities in the mortgage's securitization. The relevant factual history, as derived from the verified pleadings and documentary exhibits submitted by both parties, is as follows.
On December 26, 2006, Plaintiff, Tracy Andersen, as sole mortgagor, executed a promissory note in the amount of $315,000.00 in favor of Countrywide Home Loans, Inc., to finance the purchase or refinancing of residential real property located at 116 New Street, Staten Island, New York (hereinafter, the "Subject Property"). As security for repayment of the [*2]indebtedness, Plaintiff contemporaneously executed a mortgage agreement, which encumbered the Subject Property and identified Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender and for the lender's successors and assigns.
The mortgage was duly recorded in the Office of the Richmond County Clerk on January 30, 2007, under Land Document Number 175769. Plaintiff does not allege that the note was improperly executed, that the mortgage was fraudulently induced, or that she failed to receive the loan proceeds. Nor does she dispute that the mortgage has since remained of record as an encumbrance against the Subject Property.
On or about May 16, 2011, MERS, acting as nominee, executed an Assignment of Mortgage, transferring the mortgage to Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of the CWABS Inc., Asset-Backed Certificates, Series 2007-1 (hereinafter, "Defendant" or "Trustee"). That assignment was recorded on May 24, 2011, in the Richmond County Clerk's Office under Land Document Number 382933. The Plaintiff alleges no defect in the execution or recording of this instrument.
Thereafter, Plaintiff and Defendant, through its servicing agents, executed two mortgage modification agreements. The first was a Home Affordable Modification Agreement dated April 1, 2015, executed by Plaintiff and Defendant, through Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, acting as attorney-in-fact. This agreement was recorded on June 16, 2015, under Land Document Number 564984, and modified the terms of the original note and mortgage to reflect new payment obligations. The second modification agreement, dated October 11, 2017, was executed by Plaintiff and Specialized Loan Servicing LLC, acting as servicer on behalf of the Trustee, and recorded on November 29, 2017, under Land Document Number 678173.
Despite these multiple acknowledgments of the mortgage's validity and Plaintiff's ongoing obligation, no satisfaction, release, or discharge of mortgage has been filed, nor does Plaintiff assert that the debt was paid in full or extinguished by operation of law.
On May 5, 2022, Defendant commenced a foreclosure action against Plaintiff in the Supreme Court, Richmond County, under Index No. 135047/2022, asserting default under the mortgage and seeking judicial sale of the Subject Property.
In response, Plaintiff commenced the instant action on January 15, 2025, by filing a verified complaint seeking to quiet title to the Subject Property and to declare the mortgage void. Plaintiff's central contention is that the assignment of the mortgage to the securitized trust in 2011 occurred after the trust's closing date, thereby violating provisions of a Prospectus Supplement and/or Pooling and Servicing Agreement (PSA) allegedly governing the CWABS Inc. Asset-Backed Certificates, Series 2007-1 trust. She further invokes 26 U.S.C. § 860G, a section of the Internal Revenue Code defining REMIC compliance requirements, and contends that the mortgage is not a "qualified mortgage" under that statute.
In opposition to Defendant's motion, Plaintiff has submitted additional materials, including what she purports to be the full PSA and Prospectus Supplement, copies of IRS statutes and regulations, and documentary evidence that she has reported the trust to the Internal Revenue Service Whistleblower Office, alleging systemic REMIC violations. She also asserts that Defendant violated certain consumer protection regulations by failing to designate a "single point of contact" under federal mortgage servicing rules, resulting in a foreclosure filing that she characterizes as avoidable.
IV. Conclusions of Law
A. Standard Under CPLR § 3211 [a] [7]
A motion to dismiss pursuant to CPLR § 3211 [a] [7] presents a question of law: whether the allegations set forth in the complaint, taken as true, state a legally cognizable cause of action. The motion is not intended to test the truth of the plaintiff's allegations but rather their legal sufficiency. (see Leon v Martinez, 84 NY2d 83 [1994]). The Court must afford the pleading a liberal construction, accept as true all facts alleged therein, and draw every reasonable inference in the plaintiff's favor. (see Guggenheimer v Ginzburg, 43 NY2d 268 [1977]; ABN AMRO Bank, N.V. v MBIA Inc., 17 NY3d 208 [2011]; J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324 [2013]).
However, this standard is not without limits. While factual allegations are entitled to favorable inferences, bare legal conclusions, self-serving characterizations, and contentions which are flatly contradicted by documentary evidence or inherently incredible are not entitled to the presumption of truth. (see Rovello v Orofino Realty Co., 40 NY2d 633 [1976]); Matter of Sud v. Sud, 211 AD2d 423 [1st Dept 1995]). The Court may freely consider the complaint, any exhibits annexed thereto, and any documents incorporated by reference or of which judicial notice may be taken, without converting the motion into one for summary judgment. (see Nonnon v City of New York, 9 NY3d 825 [2007]).
Where, as here, a complaint is grounded in documentary evidence, specifically recorded mortgages, assignments, and contractual instruments, the Court may consider such documents in assessing whether the claims alleged are legally cognizable. (see CPLR § 3211 [a] [1]; Bronxville Knolls, Inc. v Webster Town Ctr. Partnership, 221 AD2d 248 [1st Dept 1995]). A complaint may be dismissed under CPLR § 3211 [a] [7] where it fails to allege essential elements of a cause of action or rests upon conclusory or speculative theories unsupported by operative facts.
Here, even taking Plaintiff's allegations at face value, the Complaint fails to state any cognizable claim under New York law. The theory underpinning her claim, that a mortgage becomes void due to alleged REMIC tax violations or belated assignments within a securitization trust, is not recognized by any New York court as a basis for invalidating a mortgage or clearing title. Moreover, her reliance on documents extrinsic to the mortgage, such as the Prospectus Supplement, the Pooling and Servicing Agreement, and the Internal Revenue Code, does not render the underlying lien facially void or extinguished. Rather, it underscores the speculative and collateral nature of her claims.
Accordingly, and for the reasons more fully set forth below, dismissal pursuant to CPLR § 3211 [a] [7] is not only appropriate but compelled by both precedent and prudential limits.
B. Plaintiff Lacks Standing to Challenge the Assignment Based on Alleged Noncompliance with Securitization Documents
At the core of Plaintiff's theory lies the proposition that the assignment of her mortgage, executed on May 16, 2011, occurred outside the temporal parameters delineated in the governing trust documents, specifically a Prospectus Supplement and a Pooling and Servicing Agreement ("PSA") allegedly associated with the CWABS Inc., Asset-Backed Certificates, Series 2007-1 REMIC trust. She posits that this delay renders the assignment void and, therefore, invalidates Defendant's interest in the mortgage.
This argument is squarely foreclosed by binding and persuasive authority. The courts of this state have long recognized that a mortgagor who is neither a party to nor an intended third-party beneficiary of a securitization trust or its governing agreements lacks standing to assert [*3]claims predicated on alleged noncompliance with those documents. (see Bank of Am., N.A. v Patino, 128 AD3d 994 [2d Dept 2015]) ("[T]he defendant did not have standing to assert noncompliance with the PSA"); (see also U.S. Bank Nat'l Ass'n v Carnivale, 138 AD3d 1220 [3d Dept 2016]; 767 Third Ave. LLC v Orix Capital Mkts., LLC, 26 AD3d 216 [1st Dept 2006]).
This principle derives from the well-established doctrine that a plaintiff cannot assert the contractual rights of third parties absent a clear intent to confer enforcement rights. Here, Plaintiff has not, and cannot, allege that she was either a party to or an intended beneficiary of the CWABS trust or its PSA. Accordingly, her attempt to premise a claim on the alleged tardiness of the assignment into the trust must be rejected as a matter of law.
C. The Assignment, Even if Irregular, is Not Void but Voidable, and Not by Plaintiff
Even assuming arguendo that the mortgage was assigned in a manner inconsistent with the PSA, such a defect would not render the assignment void ab initio. Rather, under New York law, an act performed by a trustee in contravention of trust terms is voidable at the instance of a party to the trust, not by an unrelated third party. (see Rajamin v Deutsche Bank Nat'l Tr. Co., 757 F3d 79, 90 [2d Cir 2014]) ("[F]ailures to comply with the terms of a PSA are voidable, not void"); (see also Zutel v Wells Fargo Bank, N.A., 2014 WL 4700022, at *4 [EDNY Sept. 22, 2014]).
Plaintiff's reliance on EPTL § 7-2.4 is misplaced. That statute renders acts of a trustee "in contravention of the trust" void as to the interests of the trust or its beneficiaries, not third parties. The interpretive gloss applied by both federal and state courts makes clear that a borrower cannot wield this provision as a sword to nullify assignments on the basis of alleged violations of securitization protocols.
D. No Cause of Action Arises Under 26 U.S.C. § 860G or Related Tax Code Provisions
Plaintiff devotes substantial attention to the Internal Revenue Code, specifically, 26 USC § 860G and related Treasury Regulations, asserting that the purportedly belated assignment of her mortgage disqualified the loan from REMIC eligibility, thereby imperiling the trust's tax-exempt status and rendering the assignment void.
However, this Court is constrained to apply the law as written and as interpreted by the judiciary. The Internal Revenue Code does not create a private cause of action in favor of a mortgagor to challenge the REMIC status of a securitization trust. The enforcement of § 860G and related provisions is vested exclusively in the Internal Revenue Service, not the judiciary, and certainly not at the behest of a borrower who lacks privity or statutory authorization. Courts have uniformly rejected such claims. (see Barnett v Countrywide Bank, FSB, 60 FSupp3d 379, 387—88 [EDNY 2014) ("The borrowers lack the requisite standing, both constitutional and prudential, to challenge the securitization process").
The filing of an IRS Form 3949-A or referral to the IRS Whistleblower Office, while perhaps procedurally appropriate, has no bearing on this Court's jurisdiction or the sufficiency of the present pleading.
E. Plaintiff Fails to State a Cause of Action for Quiet Title
To maintain a cause of action for quiet title under Article 15 of the Real Property Actions and Proceedings Law, a plaintiff must plead (i) an estate or interest in real property, and (ii) that the defendant's claim thereto is invalid or unfounded. (see Acocella v Bank of NY Mellon, 127 AD3d 891, 893 [2d Dept 2015]). A "removable cloud" on title must arise from an apparent instrument, such as a deed or mortgage, that is facially invalid or legally inoperative.
Here, Plaintiff does not deny the execution of the mortgage nor does she allege that the [*4]debt was satisfied, discharged, or otherwise extinguished. Her argument that the mortgage is void due to alleged defects in the timing of the assignment does not render it invalid under applicable law. Indeed, the very documents she relies upon (i.e., the recorded mortgage and subsequent modifications) reaffirm her ongoing obligation and the validity of the lien. (see Jahan v U.S. Bank N.A., 127 AD3d 926, 927 [2d Dept 2015]) (quiet title claim fails where mortgage is not alleged to be facially void).
Accordingly, the Court finds that Plaintiff has failed to demonstrate the existence of an invalid encumbrance or bona fide justiciable controversy that would support the extraordinary equitable remedy of quiet title.
F. Alleged Breach of Fiduciary Duty Under Mortgage Servicing Regulations
Plaintiff's invocation of Consumer Financial Protection Bureau Regulation § 1024.40, which imposes a "continuity of contact" obligation upon servicers under certain federal servicing guidelines, fares no better. Even assuming the factual accuracy of Plaintiff's allegation that she was denied a "single point of contact" over a period of two years, nothing in the cited regulation creates a private right of action for borrowers. Moreover, Plaintiff fails to plead how such regulatory violations by a servicer would vitiate the mortgage itself or affect the Defendant's capacity as holder of the security interest.
In any event, this is not a servicing dispute. It is a title claim, and no fiduciary duty is owed by a securitization trustee to a mortgagor absent extraordinary circumstances not alleged here.
G. Observations on Federal Tax Allegations and Institutional Restraint
While the Court has already concluded that Plaintiff lacks standing to invoke provisions of the Internal Revenue Code as a basis for title relief, it finds it appropriate to comment further on the broader jurisdictional and institutional implications raised by such claims, particularly in an era of increasing reliance by litigants on securitization theories and federal tax structures to resist mortgage enforcement.
Plaintiff's opposition rests in substantial part upon the proposition that the subject mortgage was not transferred into the CWABS Inc. Asset-Backed Certificates, Series 2007-1 trust in a timely manner, thereby violating the eligibility criteria for REMIC status as defined under 26 USC § 860G and related Treasury Regulations. Plaintiff asserts that this alleged REMIC noncompliance disqualifies the mortgage as a "qualified mortgage," exposes the trust to adverse tax consequences, and renders the assignment void. To support this theory, she references communications submitted to the Internal Revenue Service, including IRS Form 3949-A and a whistleblower letter.
Even if these allegations were factually well-founded, which the Court does not assume, they are jurisdictionally misplaced. The Internal Revenue Code does not confer upon private mortgagors any enforceable rights to contest the tax compliance of REMIC trusts, nor does it create a private right of action for borrowers to invalidate mortgage assignments on the basis of perceived tax irregularities. The proper, and exclusive, enforcement authority over REMIC compliance rests with the Internal Revenue Service, an agency of the federal executive branch operating under express delegation from Congress.
Federal courts, including those sitting in this State, have uniformly rejected attempts by borrowers to bootstrap federal tax eligibility arguments into claims affecting title or the enforceability of mortgage instruments. (see Rajamin v Deutsche Bank Nat'l Tr. Co., 757 F3d 79, 90 [2d Cir 2014]) ("Failures to comply with the terms of a PSA are voidable, not void, and [*5]enforceable only by trust beneficiaries."); (see Barnett v Countrywide Bank, FSB, 60 FSupp3d 379, 387—88 [EDNY 2014]) ("The borrowers lack the requisite standing, both constitutional and prudential, to challenge the securitization process.").
Beyond standing, this Court must observe that permitting state courts to adjudicate REMIC tax compliance, or to declare mortgage instruments void based on such theories, would constitute an impermissible intrusion into an area reserved to the exclusive competence of the federal government. The authority to enforce federal revenue laws and regulate tax-advantaged financial vehicles is lodged firmly with the Internal Revenue Service. State courts are neither equipped nor authorized to conduct de facto tax audits or to interpret the tax code in a manner that confers equitable relief upon private parties who are not subject to the statute's enforcement framework.
To allow otherwise would distort the statutory purpose of the REMIC regime and invite a flood of litigation in which mortgagors seek to undermine valid mortgage instruments on the basis of speculative violations of complex federal tax rules, rules designed not to protect borrowers, but to regulate investment vehicles in the secondary mortgage market. As such, the Court must exercise judicial restraint, recognizing the bounds of its jurisdiction and the institutional limits of the judicial function.
Accordingly, Plaintiff's reliance on the Internal Revenue Code, REMIC structure, or any purported submission to the IRS does not, and cannot, give rise to a cognizable claim under New York law for the cancellation, discharge, or invalidation of her mortgage.
V. Conclusion and Decretal Paragraphs
Having exhaustively reviewed the Complaint, the documentary evidence incorporated therein, and the applicable legal authorities, the Court finds that Plaintiff's claims are without legal or factual foundation. The pleadings reveal not a defective mortgage, but a defective legal theory, grounded in speculative interpretations of tax code provisions and trust law doctrines to which Plaintiff has no nexus.
Accordingly, it is hereby:
ORDERED, that Defendant's motion to dismiss the Complaint pursuant to CPLR § 3211 [a] [7] is GRANTED in its entirety; and it is further
ORDERED, that the Complaint is hereby DISMISSED WITH PREJUDICE; and it is further
ORDERED, that the Clerk shall enter judgment accordingly.
Dated: July 16, 2025
Staten Island, New York
E N T E R,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT